**IT IS ORDERED as set forth below:**



**Date: September 27, 2019**

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE:<br>JEFFERY BERNARD JOHNSON,<br><br>　　　　Debtor | ) ) ) ) ) | Chapter 13 Case<br>Number <u>18-10228</u> |
| JEFFERY BERNARD JOHNSON,<br><br>　　　　Plaintiff<br><br>v.<br><br>NORTH MILL CREDIT F/K/A EFS<br>CREDIT TRUST<br><br>　　　　Defendant | ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding<br>No. <u>18-01016</u> |

<u>**OPINION AND ORDER**</u>

　　　　Before the Court is the Motion for Summary Judgment
filed by North Mill Credit f/k/a EFS Credit Trust ("North Mill")

seeking a determination that Jeffrey Bernard Johnson's ("Debtor") Peterbilt 587 truck ("the Truck") was not property of Debtor's bankruptcy estate at the time of repossession and that the repossession did not violate the provisions of the §362[1] automatic stay, the §1306 co-debtor stay or the terms of Debtor's confirmed chapter 13 plan. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, North Mill's motion for summary judgment is granted in part and denied in part.

## UNDISPUTED FACTS

In August 2016, North Mill financed B&J Innovative Transport, Inc.'s ("B&J Corporation") purchase of the Truck. Dckt. No. 18, Aff. of Solomon. Debtor signed the loan documents as president of B&J Corporation and personally guaranteed B&J Corporation's loan obligations. Id. In December 2017, North Mill extended additional funding to B&J Corporation for repairs to the Truck. Id. North Mill received 14 pre-petition payments on the loan, all from B&J Corporation, not by the Debtor. Id.

B&J Corporation has not filed bankruptcy. Debtor filed his individual chapter 13 bankruptcy petition in February 2018.

---

[1] Unless otherwise noted all statutory references refer to title 11 of the United States Code.

Chap. 13 Case No. 18-10228, Dckt. No. 1. Initially, Debtor did not list the Truck in his bankruptcy schedules (Schedule A/B) or his ownership interest in B&J Corporation. Chap. 13 Case No. 18-10228, Dckt. No. 1. Subsequently, Debtor amended his schedules to provide "Debtor owns B&J [Corporation]. The business does not own any assets other than [the Truck]. The [Truck] is encumbered by a lien and there is no equity therein. The business currently has no value except for the value added by Debtor's labor." Chap. 13 Case No. 18-10228, Dckt. No. 19. Debtor's schedules also certify he has no executory contracts or unexpired leases. Id., Dckt. No. 1, Sch. G.

Debtor's chapter 13 plan proposes to pay North Mill as a fully secured claim in the amount of $23,000.00 with 4% interest at a rate of $423.58 per month. Chap. 13 Case No. 18-10228, Dckt. No. 12. Paragraph 11 of the plan includes this District's standard provision -- "Amounts of Claims and Claim Objections. The amount, and secured or unsecured status, of claims disclosed in this plan are based upon the best estimate and belief of the Debtor(s). An allowed proof of claim will supersede those estimated claims. In accordance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure objections to claims may be filed before or after confirmation." Chap. 13 Case No. 18-10228,

Dckt. No. 12. (emphasis added).

North Mill received notice of Debtor's bankruptcy and filed a proof of claim asserting a $41,838.43 unsecured claim based upon "Guaranty on Security Agreement." Proof of Claim No. 2, Claims Register, Chap. 13 Case No. 18-10228. Debtor did not object to North Mill's proof of claim. The bankruptcy plan was confirmed. As an unsecured claim in a 0% dividend case, the Trustee has not made any disbursement to North Mill.

Post-petition, post-confirmation and with notice of the bankruptcy, North Mill repossessed the Truck without obtaining prior court approval. Dckt. No. 18, Aff of Solomon. After the repossession, North Mill received a communication from Debtor's attorney requesting the Truck's location so Debtor could retrieve his personal belongings. Id. North Mill provided Debtor's counsel with the storage yard's location, retrieval hours and the specific stock number required to locate the Truck. Id. Debtor visited the storage yard. Id. During this process, North Mill received a call from the storage yard reporting that Debtor was on site but there was so much personalty and large items in the Truck, they could not spare the manpower to ferry the personalty from the Truck to the Debtor. Id. In response, North Mill authorized the storage yard to allow Debtor direct access to the

Truck to retrieve his personal items, asking the yard to have Debtor sign an inventory of the items he recovered.   <u>Id.</u> Subsequently, North Mill was informed Debtor had removed his belongings but refused to provide an inventory.   <u>Id.</u>   The storage yard forwarded to North Mill a partial list of items Debtor had mentioned he had retrieved -- microwave, refrigerator, metal chain, four straps, and a range -- noting Debtor had left but would not sign an inventory list.   <u>Id.</u>   Debtor acknowledges being given access to the Truck, but claims many of his personal items were missing or spotted in a nearby dumpster.   Dckt. No. 25, Debtor's Response to Statement of Material Facts, ¶10 and ¶11, p. 4.

After the repossession, the Truck was sold by North Mill to a bona fide purchaser for value.   Dckt. No. 25, Debtor's Response.

<u>CONCLUSIONS OF LAW</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

(1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted). Although the burden is on the movant to prove that no genuine issue of material fact exists, if the issue on which summary judgment is sought is one as to which the non-movant bears the burden of proof at trial, the movant need not support his motion with evidence negating the non-movant's case but rather may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. Id. (holding summary judgment is proper against a party who has failed to demonstrate the existence of a genuine issue of material fact on an element of the case for which that party bears the burden of proof, even where the moving party has not offered evidence negating the opponent's claim). Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 288-89 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985)(citations omitted). "The showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law." Bushie v. Stenocord Corp., 460 F.2d 116, 119 (9th Cir. 1972)(quoting McGuire v. Columbia Broadcasting System, Inc., 399 F.2d 902, 905 (9th Cir. 1968).

## I.   Section 362(a) - Truck.

North Mill argues the Truck was not property of the Debtor's bankruptcy estate because it was owned by B&J Corporation, not Debtor. In response, Debtor argues, as the owner and operator B&J Corporation and guarantor, the Truck is property of Debtor's bankruptcy estate and the repossession violated §362.

Debtor's complaint and responsive pleadings generically claim North Mill's actions violated §362(a) without specifying which §362(a) subsection was purportedly violated. However, Debtor's complaint and argument focus on §362(a)(3) and (a)(4), which provide the filing of a bankruptcy petition stays:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate . . . .

11 U.S.C. §362(a)(3) and (a)(4). Debtor raises the following four arguments: (1) the Truck is property of Debtor's bankruptcy estate and its repossession violated §362(a)(3) and (a)(4); (2) the Truck is community property and therefore part of Debtor's bankruptcy estate; (3) B&J Corporation is the co-debtor on the Truck and therefore North Mill violated the co-debtor stay when repossessing the Truck; and (4) the terms of the confirmed plan brought the Truck into Debtor's bankruptcy estate and bind North Mill.

Addressing each of Debtor's articulated arguments:

## A. Property of the Bankruptcy Estate under §541(a)(1).

The filing of the bankruptcy petition creates a bankruptcy estate comprised of "all the legal or equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. §541(a)(1)(emphasis added). Federal law determines whether a debtor's interest is property of the bankruptcy estate; however, "the nature and existence of a debtor's interest in property is determined under state law." In re Thomas, 883 F.2d 991, 995 (11th Cir. 1989)(quoting In re DePoy, 29 B.R. 466, 469 (Bankr. N.D. Ind. 1983)); Butner v. U.S., 440 U.S. 55. 55 (1979)("Property interests in bankruptcy are created and defined by state law."). Under Georgia law, "corporations are separate legal entities from their shareholders, officers, directors, and employees . . . . This is so even in the situation in which a corporation is owned solely by one person." Dep't of Transp. v. McMeans, 754 S.E.2d 61, 63 (Ga. 2014)(internal citations omitted).

In this case, the Truck belonged to B&J Corporation, a Georgia corporation, a separate and distinct legal entity from Debtor. B&J Corporation is not in bankruptcy. Debtor's ownership of B&J Corporation does not make him the owner of B&J Corporation's assets. In re Penn, 2010 WL 9445533, at *2 (Bankr. N.D. Ga. Apr. 2, 2010)("A separate legal entity that is established to hold property is considered a separate legal entity for that purpose and, should that legal entity desire bankruptcy protection, it must file its own petition . . . . The fact that

AO 72A
(Rev. 8/82)

an individual debtor holds an interest in another entity does not give that individual a direct ownership interest in the assets owned by the other entity . . . . Here, the [d]ebtor's filing of a petition did not create an automatic stay of actions taken against [the limited liability company]. Further, the [p]roperty is not property of the [d]ebtor's bankruptcy estate. The [d]ebtor chose to place ownership of the [p]roperty into a limited liability company. Having assumed whatever benefits flowed from that decision, he cannot now ignore the existence of the LLC in order to escape its disadvantages."); In re Mohr, 538 B.R. 882, 888 (Bankr. S.D. Ga. 2015)(the automatic stay does not apply to property owned by a separate corporate entity even when Debtor has personally guaranteed the loan). Although the automatic stay is "extremely broad in scope . . . and should apply to almost any type of formal or informal action against the debtor or the property of the estate," it does not extend "to separate legal entities such as corporate affiliates, partners in debtor partnerships or to codefendants in pending litigation." Patton v. Bearden, 8 F.3d 343, 349 (6th Cir. 1993) (quoting 2 Collier on Bankruptcy ¶362.04 (15th ed. 1993)); see also In re Furlong, 660 F.3d 81, 89-90 (1st Cir. 2011)(stating that it is well-settled that the automatic stay "does not extend to the assets of a

AO 72A
(Rev. 8/82)

corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock"); In re Calhoun, 312 B.R. 380, 384 (Bankr. N.D. Iowa 2004)("[T]he separate legal existence of a corporation is respected in bankruptcy . . . . [T]he automatic stay does not stay actions against separate entities associated with the debtor.")(citing In re Peoples Bankshares, Ltd., 68 B.R. 536 (Bankr. N.D. Iowa 1986)(a debtor's ownership of all the shares in a corporation does not bring that corporation's property into the bankruptcy estate)).

Debtor chose to form B&J Corporation and received numerous benefits of operating a corporate entity. Proper use of the corporate form would protect Debtor's assets from the reach of B&J Corporation's general creditors. Debtor cannot now ignore B&J Corporation's corporate existence to make its assets Debtor's personal assets.

The fact that Debtor guaranteed the loan does not change this result or bring the Truck into Debtor's bankruptcy estate. See In re Sapna, Adv. Proceeding No. 07-01001, slip op. at 9-10 (Bankr. S.D. Ga. Mar. 31, 2008)("Many courts have held the automatic stay protects the interest of the debtor not non-bankrupt co-debtors, codefendants, sureties or guarantors."); In re Everchanged, 230 B.R. 891, 894 (Bankr. S.D. Ga. 1999)(automatic

stay does not prevent foreclosure on real property that is not property of the estate even though foreclosure may potentially result in a deficiency judgment against debtor); see also In re Mohr, 538 B.R. at 888 (the stay does not apply to property owned by a separate corporate entity even when Debtor has a personal guaranty on the loan); In re Sheu, 2009 WL 1794473, at *2 (Bankr. E.D.N.Y. 2009)(automatic stay did not extend to the house where debtor lived that was owned by a corporation wholly owned by the debtor); see also In re Com. Mortg. and Fin. Co., 414 B.R. 389 (Bankr. N.D. Ill. 2009)("As a general rule, property of the estate includes the debtor's stock in a subsidiary, but not the assets of the subsidiary."); In re Murray, 147 B.R. 688, 690 (Bankr. E.D. Va. 1992)(denying debtor's motion for enforcement of the automatic stay and for turnover of property owned by a corporation in which debtor was the sole shareholder; "the debtor has no present interest in property owned by the various corporate entities.").

Debtor's ownership interest in B&J Corporation does not make Debtor the owner of B&J Corporation's assets. Debtor's complaint and arguments focus on his ownership and operation of B&J Corporation. Debtor has not asserted or disclosed any colorable claim of ownership or possession of the Truck such as

a lease/operating agreement or presented any argument to his right to the Truck that is separate and distinct from Debtor's ownership interest in B&J Corporation. See generally In re Brittain, 435 B.R. 318, 324 (Bankr. D.S.C. 2010)(holding that the individual debtors' asserted right of a possessory interest in a tractor trailer truck owned by an LLC in which debtors were sole members was as an agent or representative of the LLC and therefore, not a right protected by the automatic stay). Nor has Debtor asserted any recognized redemption rights in the Truck. See generally In re Rozier, 348 F.3d 1305, 1306 (11th Cir. 2003)(stating that if the debtor had only had a bare right of redemption, the vehicle was not part of the bankruptcy estate); see also In re Lewis, 137 F.3d 1280, 1285 (11th Cir. 1998)("a bare legal right of redemption — failed to render the automobile property of the estate"). Debtor also has not requested or plead any unusual facts warranting the use of the Court's equitable powers. See generally In re A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)(using §105 in the unusual circumstances where there is such an "identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that judgment against the third-party defendant will in effect be a judgment or finding against the debtor"); cf.

In re Johns-Manville Corp., 26 B.R. 405 (Bankr. S.D.N.Y. 1983)(denying using §105 to extend the stay to codefendants in asbestos litigation where codefendants could not show irreparable harm and the debtor was not an indispensable party to asbestos litigation).

Each case is judged on its merits and the arguments presented. Requesting relief from the stay clearly is the more prudent course of action. A creditor assuming a debtor's possession of personalty is insufficient to fall within the protections of §362 does so at its own peril and will be subject to liability for actual and punitive damages pursuant to §362(k) should its actions be found to have violated the automatic stay. Nevertheless, given the facts and arguments presented in this case, the Court finds North Mill's motion for summary judgment should be granted as to violation of the automatic stay for repossession of the Truck.

### B. Community Property - §541(a)(2).

Debtor also contends the Truck is property of his bankruptcy estate pursuant to §541(a)(2) which provides:

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

    (A) under the sole, equal, or joint management and control of the debtor; or

> (B)  liable for an allowable claim against the debtor,
> or for both an allowable claim against the debtor
> and an allowable claim against the debtor's
> spouse, to the extent that such interest is so
> liable.

11 U.S.C. §541(a)(2).

Section 541(a)(2) applies to "all interests of the debtor and the debtor's spouse in community property." Id. (emphasis added).  The Truck is not community property, and Georgia is not a "community property" state.  Ghee v. Retailers Nat'l Bank, 271 F. App'x 858, 860 (11th Cir. 2008)("Under §541(a)(2), certain 'community property' of a non-debtor spouse may be included in the property of the bankruptcy estate . . . . 'The nature of a bankrupt's interest in property is determined by state law'. . . . Georgia is not a 'community property' state. Ga. Code Ann. § 19-3-9."); see also 5 Collier on Bankruptcy ¶541.11 (16th ed. 2019)("The term 'community property' is not defined in the [Bankruptcy] Code but has been interpreted as a term of art referring only to the means of holding marital property in those states that have adopted a community property system.")(citing In re Robertson, 203 F.3d 855, 859 (5th Cir. 2000)("The ultimate characterization of property as either community or separate is determined by applicable state law, and that determination establishes what interest, if any, the

bankruptcy estate has in the property."). There are no facts or arguments presented that Debtor's marital status invokes the provisions of §541(a)(2) as to the Truck. For this reason, the Truck is not property of Debtor's bankruptcy estate pursuant to §541(a)(2).

## II. Section 1301.

Debtor also argues North Mill violated the co-debtor stay of 11 U.S.C. §1301 when repossessing the Truck. The co-debtor stay of 11 U.S.C. §1301 states:

> (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a **consumer debt of the debtor from any individual** that is liable on such debt with the debtor, or that secured such debt, unless—
>
> (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
>
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. §1301 (emphasis added). By the plain language of the statute, the co-debtor stay only applies to individuals liable on a "consumer debt" with a debtor. See U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)(a court must apply the plain language of the statute if it is unambiguous). This debt is a corporate business debt of B&J Corporation, not a "consumer debt."

See 11 U.S.C. §101(8) (defining "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose."); In re Penn, 2010 WL 9445533, at *4 (co-debtor stay only applies to a consumer debt not a business debt).

Also, B&J Corporation is a Georgia corporation, not an "individual" as defined by the Eleventh Circuit. See Jove Eng'g, Inc. v. Internal Revenue Serv., 92 F.3d 1539, 1549-53 (11th Cir. 1996)(recognizing the Bankruptcy Code does not define "individual" and concluding that "individual" refers to natural persons not corporate entities).

For these reasons, North Mill is entitled to summary judgment on Debtor's claim that it violated the co-debtor stay when it repossessed the Truck.

## III. Effect of Confirmation.

Debtor also argues pursuant to §1327,[2] North Mill is bound by the terms of the confirmed chapter 13 plan which lists North Mill as a secured creditor to be paid at an interest rate of 4% with monthly payments of $423.58. North Mill never objected

---

[2] 11 U.S.C. §1327 states in pertinent part:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

to confirmation, rather, it filed an unobjected to unsecured proof of claim based upon Debtor's personal guaranty of B&J Corporation's debt.

There is no real conflict between the terms of the confirmed plan and North Mill's actions. Paragraph 11 of Debtor's plan provides the amount and secured or unsecured status of claim in the plan are Debtor's best estimate and belief and an allowed proof of claim supersedes those estimates, allowing for objections to be filed to resolve conflicts. Chap. 13 Case No. 18-10228, Dckt. No. 12, ¶11. Consistent with Debtor's liability through the personal guaranty, North Mill filed an unsecured claim in the bankruptcy estate. Debtor did not object to this proof of claim. As a result, North Mill's proof of claim correctly classifies the nature of its claim and supersedes any contrary plan provision. Id. As such, upon confirmation, the Trustee properly classified the claim as unsecured. Chap. 13 Case No. 18-10228, Dckt. No. 40, Trustee's Report On Confirmation.

North Mill argues confirmation cannot bring the Truck into the bankruptcy estate if it was never property of the estate. This Court agrees. In a recent case involving a title pawn, In re Thorpe, 2019 WL 1785303, at *4 (Bankr. S.D. Ga. March 29, 2019), the bankruptcy court rejected the argument that

confirmation of a plan barred the creditor from arguing it was entitled to relief from the stay because the vehicle was not property of the estate noting:

> there are limits to the preclusive effect of a confirmed plan that is not perfectly legal. Under 11 U.S.C. §1322(b)(2), debtors may modify the rights of certain secured creditors in their chapter 13 plan, but debtors "succeed[ ] to no greater interest in an asset than that held by the debtor at the time the bankruptcy petition was filed."

In re Thorpe, 2019 WL 1785303, at *4 (quoting In re Dunlap, 158 B.R. 724, 727 (M.D. Tenn. 1993)); see also In re Northington, 876 F.3d 1302 (11th Cir. 2017). Debtor's plan as proposed and confirmed cannot create estate property that did not exist on the petition date. See In re Thorpe, 2019 WL 1785303, at *4.

For these reasons, Debtors confirmed plan did not have the effect of making the Truck property of Debtor's bankruptcy estate.

## IV. Section 362(a) - Personal Property.

Debtor also contends the stay was violated when Debtor's personal property located within the Truck was repossessed and is missing or was spotted in a nearby dumpster. While there may be dispute as to what items were left in the Truck, there is no dispute that Debtor's personal belongings are property of Debtor's bankruptcy estate under §541(a)(1).

Debtor's discovery responses include an inventory of the items he claims were missing from the Truck. Dckt. No. 18, Motion for Summary Judgment, Ex. D, Plaintiff's Response to Defendant's First Interrogatories, Ex. C, Itemized Listing of Loss Including Items Left in the 2012 Peterbilt 7/5/2018 Thru Present. When Debtor arrived at the storage yard, there was so much personalty and large items in the Truck that the storage yard could not spare the manpower to ferry the personalty from the Truck to the Debtor. Dckt. No. 18, Aff. of Solomon. With North Mill's consent, Debtor was given access to the Truck located in a storage yard. North Mill asked the stock yard to have Debtor sign an inventory of the items he recovered. Id. Subsequently, North Mill was informed Debtor had removed his belongings but left without signing an inventory. Id. The storage yard forwarded to North Mill the partial list of items Debtor had mentioned he had retrieved -- microwave, refrigerator, metal chain, four straps, and a range - and noted the Debtor left without signing any inventory. Id. Debtor acknowledges being given access to the Truck, but claims many of his personal items were missing or spotted in a nearby dumpster. Dckt. No. 25, Debtor's Response to Statement of Material Facts, ¶10 and ¶11, p. 4.

At this point, a genuine question of fact remains regarding potential stay violations related to Debtor's personal property, and North Mill's summary judgment motion as to the personal property is denied.

In conclusion, North Mill's Motion for Summary Judgment is ORDERED GRANTED in part and DENIED in part, specifically the motion for summary judgment is GRANTED as to violation of the automatic stay by repossession of the Truck and is DENIED as to Debtor's personal items located in the Truck.

**[END OF DOCUMENT]**

AO 72A

(Rev. 8/82)